IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| CUMBERLAND & ERLY, LLC, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. RDB-14-2399 |
| NATIONWIDE MUTUAL INSURANCE COMPANY, | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiff Cumberland & Erly, LLC ("C&E" or "Plaintiff") brings this diversity action against Defendant Nationwide Mutual Insurance Company ("Nationwide" or "Defendant"), seeking a declaratory judgment in its favor pursuant to 28 U.S.C. § 2201. Essentially, C&E claims that Nationwide breached the terms of the insurance policy held by C&E (the "Policy) by failing to compensate C&E for a claim arising under the Employee Dishonesty Coverage. This claim arose after the theft by an employee of $157,268.75 from a trust account. C&E asks this Court to enter a judgment declaring that Nationwide has an obligation to pay this claim pursuant to the terms of the Policy.

Currently pending are Defendant Nationwide's Motion for Summary Judgment (ECF No. 16) and Plaintiff C&E's Cross-Motion for Summary Judgment (ECF No. 19). The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2014). For the reasons that follow, Defendant Nationwide's Motion for Summary Judgment (ECF No. 16) is DENIED and Plaintiff C&E's Cross-Motion for Summary Judgment (ECF No. 19) is GRANTED. In sum, C&E suffered a "direct loss" under the

Employee Dishonesty Coverage when its employee embezzled funds from a trust for which C&E had an insurable interest. It is thus entitled to reimbursement for that loss, pursuant to the terms of the Policy. Judgment is entered in favor of C&E and against Nationwide.

## BACKGROUND

The parties agree that this action presents no issues of material fact and have stipulated to a joint statement of facts. Def.'s Mot. for Summ. J. Ex. A, ECF No. 16-2. The parties' joint statement provides:

1. Plaintiff Cumberland & Erly, LLC is a limited liability company, formed and organized in Maryland, with its principal place of business in Prince Frederick, Maryland, in Calvert County.

2. C&E is a law firm and all of its members are residents of Maryland.

3. Laurence W.B. Cumberland, Esquire ("Cumberland"), and John L. Erly, Esquire, are the managing members of Plaintiff, and both are members of the Maryland Bar admitted to practice before the Court of Appeals.

4. Defendant Nationwide Mutual Insurance Company is a corporation, whose headquarters and principal place of business are located in Columbus, Ohio.

5. Nationwide is authorized to write insurance contracts and transact business in the State of Maryland, including in this judicial district, and it issues insurance policies and transacts business in Maryland, including the insurance policy and transaction of business out of which this case arises.

6. On or about May 29, 2012, Nationwide issued to Plaintiff a Premier Businessowners Policy, Policy No. ACP BPOM 5162673122 (the "Policy"), for the policy

period 7-24-13 to 7-24-14.

7. A true and correct copy of the Policy is attached to Defendant's Motion for Summary Judgment as Exhibit B.

8. For purposes of this case, an identical policy was issued by Nationwide to Plaintiff for the period 7-24-12 to 7-24-13.

9. Nationwide was aware when it issued the Policy that Plaintiff was a law firm operating out of 418 Main Street, Prince Frederick, Maryland.

10. Nationwide was aware when it issued the Policy that it was insuring a law firm with respect to the coverages under the Policy.

11. Included as part of the Policy was an Employee Dishonesty Optional Coverage Endorsement ("Employee Dishonesty Coverage"), with liability limits of $500,000 per occurrence and a deductible of $500.00.

12. Plaintiff is an insured under the Policy, including with respect to the Employee Dishonesty Coverage.

13. At all pertinent times, as part of C&E's business, Cumberland has been, and has acted as, trustee of a special needs trust checking account ("the Trust Account"), held at a financial institution, established for the benefit of a disabled minor who had made a recovery in a medical malpractice action.

14. The Trust Account was opened at Community Bank of Tri-County ("the Bank") on November 1, 2010, as account no. xxxx00132, and the Trust Account has remained at the Bank at all pertinent times.

15. The account owner(s) name and address on the Trust Account has been, at all

pertinent times, Robert Karis O'Dell Irrevocable Special Needs Trust, Laurence W.B. Cumberland, P.O. Box 840, Prince Frederick, MD 20678.

16. Post Office Box 840 is the general mail post office box for Plaintiff and all statements for the Trust Account were mailed by the Bank to that Post Office Box.

17. Cumberland was, at all pertinent times, the only authorized signatory on the Trust Account.

18. Cumberland was, at all pertinent times, the trustee for the trust under which the Trust Account was established.

19. Cumberland, at all pertinent times, has been the guardian of the property of the minor for whose benefit the Trust Account was established.

20. At all pertinent times, Cumberland was the only person authorized to pay, withdraw, or transfer funds out of the Trust Account.

21. At all pertinent times, as part of his duties as the trustee of the Special Needs Trust and guardian of the minor's property, Cumberland would write checks on the Trust Account for the care, maintenance and/or benefit of the minor on whose behalf the Trust Account was opened and maintained.

22. From February 13, 2012, until August 15, 2013, Carrie Lyn Davis ("Davis") was employed by the Plaintiff as a paralegal.

23. Davis's duties included, but were not limited to, reconciling the Trust Account based on the monthly statements and canceled checks provided to Plaintiff by the Bank.

24. On August 15, 2013, C&E terminated Davis's employment, for reasons unrelated to the Trust Account.

4

25. During a routine audit of accounts performed by Donna Sealey, another employee of C&E, in February 2014, she discovered that the actual balance held in the Trust Account did not comport with the statements kept in C&E's office records.

26. Upon investigation, C&E discovered that Davis, between July 31, 2012, and July 11, 2013, had taken blank checks kept at C&E's premises for the Trust Account, had made them payable in ways that would allow her to cash or deposit funds from the Trust Account in her own name or for her benefit, and had forged Cumberland's name on those checks and negotiated them as if those checks had actually been signed by Cumberland.

27. A list of the checks forged by Davis and used by her to obtain funds from the Trust Account is attached to Defendant's Motion for Summary Judgment as Exhibit C.

28. The total amount of the checks forged by Davis to obtain funds from the Trust Account is $157,268.75, and she was able to use those forged checks to obtain that amount from the Trust Account, for her own use.

29. Davis was able to hide her theft of funds from the Trust Account by taking possession of the statements provided by the Bank and by altering those statements to make it appear that the Trust Account was in balance and that all checks were accounted for.

30. True and correct copies of the checks forged by Davis and used to obtain funds from the Trust Account are attached to Defendant's Motion for Summary Judgment as Exhibit D.

31. Plaintiff reported Davis's theft of funds from the Trust Account to law enforcement.

32. Davis has been indicted for violation of § 7-104 of the Criminal Law Article of

the Maryland Code for a theft-scheme in excess of $100,000, in Case No. 04-K-14-0000098 (Cir. Ct. for Calvert County), and a plea hearing was scheduled in Davis's criminal case for November 20, 2014.

33. Plaintiff replaced the funds stolen from the Trust Account by Davis.

34. Plaintiff made a timely claim for the loss of the funds stolen from the Trust Account with Nationwide, under the Employee Dishonesty Coverage.

35. Plaintiff has complied with all conditions under the Policy applicable to that claim.

36. On or about June 18, 2014, Nationwide unequivocally denied Plaintiff's claim under the Employee Dishonesty Coverage of the Policy.

Def.'s Mot. for Summ. J. Ex. A.

ANALYSIS

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). As noted *supra*, the parties agree that no genuine issues as to any material fact exist. Rather, the present dispute arises from the parties' differing interpretations of the Policy.

In Maryland, "the interpretation of a contract, including the determination of whether a contract is ambiguous, is a question of law." *Washington Metro. Area Transit Auth. v. Potomac Inv. Props., Inc.*, 476 F.3d 231, 235 (4th Cir. 2007) (quoting *Gresham v. Lumbermen's Mut. Cas. Co.*, 404 F.3d 253, 260 (4th Cir. 2005) (internal quotations omitted)). Insurance contracts are interpreted like other contracts, thus undefined words "are given their customary, 'ordinary,

6

and accepted meaning,' unless there is an indication that the parties intended to use the words in a technical sense." *Sullins v. Allstate Ins. Co.*, 667 A.2d 617, 619 (Md. 1995) (quoting *Cheney v. Bell Nat'l Life*, 556 A.2d 1135, 1138 (Md. 1989)). "If the language in an insurance policy suggests more than one meaning to a reasonably prudent lay person, [the language] is ambiguous." *Sullins*, 667 A.2d at 619.  If the policy language is ambiguous, then the language "will be construed liberally in favor of the insured and against the insurer *as drafter of the instrument*."[1]  *Dutta v. State Farm Ins. Co.*, 363 Md. 540, 556 (Md. 2001) (quoting *Empire Fire & Marine Ins. Co. v. Liberty Mut. Ins. Co.*, 117 Md. App. 72, 97-98 (Md. Ct. Spec. App. 1997)).

In this case, C&E and Nationwide disagree as to whether the Employee Dishonesty Coverage applies to C&E's loss due to Davis's actions. The Employee Dishonesty Coverage provides, in pertinent part:

> a. We will pay for:
>> (1) Direct loss of or damage to Business Personal Property and "money" and "securities";
>> . . .
>> (3) Loss resulting from "fraudulent instruction" directing a financial institution to transfer, pay or deliver "money" or "securities" from your "transfer account";
>> . . .
>> resulting from dishonest acts committed by any of your employees acting alone or in collusion with other persons (except you, your partner or an office of a closely held corporation) with the manifest intent to:
>> (1) Cause you to sustain loss or damage; and also
>> (2) Obtain financial benefit (other than salaries, commissions, fees, bonuses, promotions, awards,

---

[1] In general, Maryland law treats insurance policies as normal contracts and, as such, "Maryland does not follow the rule that insurance policies should, as a matter of course, be construed against the insurer." *Dutta*, 363 Md. at 556.  However, ambiguous provisions of insurance contracts are an exception to this rule; such ambiguous provisions are construed against the drafter, just as they would under normal contract interpretation rules. *See id.*

> profit sharing, pensions or other employee benefits
> earned in the normal course of employment) for:
> (a) Any employee; or
> (b) Any other person or organization.

Def.'s Mot. for Summ. J. Ex. B, at 40 (ECF No. 16-3) (Policy ¶ G(1)(a)). Specifically, the

parties raise two issues for this Court's consideration: (1) whether Cumberland had an

insurable interest in the Trust Account through his position as trustee; (2) assuming

Cumberland had an insurable interest, whether C&E is entitled to coverage under the

Employee Dishonesty Coverage. This Court will address each issue in turn.

### A. Cumberland Had an Insurable Interest in the Trust Account

Before considering whether C&E may recover under the Employee Dishonesty

Coverage, this Court must determine whether Cumberland, as trustee of the Trust Account,

had an insurable interest. In Maryland, "[a] contract of property insurance . . . is enforceable

only for the benefit of a person with an insurable interest in the property." Md. Code Ann.,

Ins. § 12-301(b). If Cumberland, the managing member and an employee of C&E, has an

insurable interest, then C&E may enforce the Employee Dishonesty Coverage of the Policy.

Maryland law defines an "insurable interest" as "an actual, lawful, and substantial

economic interest in the safety or preservation of the subject of the insurance against loss,

destruction, or pecuniary damage or impairment to the property."  Md. Code Ann., Ins. §

12-301(a).  This "insurable interest" is "measured by the extent of possible harm to the

insured from loss, injury, or impairment of the property." Md. Code Ann., Ins. § 12-301(c).

The individual or entity claiming an insurable interest need not hold a present or possessory

interest in the property to enforce the insurance contract. *See Standard Fire Ins. Co. v. Berrett*,

910 A.2d 1072 (Md. 2006) (finding that a remainder interest in real property, an interest that

is neither present nor possessory, constitutes an insurable interest under Maryland law). As this Court has previously explained, "[i]t is obvious from these statutory definitions that insurable interest in Maryland property insurance policies is a broad concept, not limited by ownership or possessory rights." *Selective Way Ins. Co. v. Nat'l Fire Ins. Co. of Hartford*, 988 F. Supp. 2d 530, 534 (D. Md. 2013).

Given this liberal scope, Cumberland holds an insurable interest in the Trust Account. Although the Trust Account beneficiary holds equitable title to the trust assets, Cumberland, as trustee, holds legal title "with all of the legal incidents and obligations of an absolute title." *McClane v. Judges of Appeal Tax Court of Baltimore City*, 143 A. 656, 660 (1928); *see also Fagnani v. Fisher*, 15 A.3d 371, 383 (Md. 2011) (explaining that a trustee holds legal title to the property, whereas the beneficiary holds an equitable interest). Legal title, which grants the holder authority to act to protect the trust assets, constitutes an "actual, lawful, and substantial economic interest in the . . . preservation of the subject of the insurance against loss" within the meaning of Md. Code Ann., Ins. § 12-301(a). Moreover, a claimant need not hold legal title to have an insurable interest. *See Commonwealth Cas. Co. v. Arrigo*, 154 A. 136, 137 (Md. 1931) (internal citation omitted) ("Although a person has no title, legal or equitable, in the property, and neither possession nor right to possession, yet he has an insurable interest therein if it is primarily charged in either law or equity with a debt or obligation for which he is secondarily liable."). The presence of legal title, however, necessarily implies that the holder also has an insurable interest in the property at issue. Cumberland thus possesses an insurable interest in the Trust Account. *See also Howard Fire Ins. Co. v. Chase*, 72 U.S. (5 Wall.) 509 (1866) ("That a trustee having no personal interest in

the property may procure an insurance on it, is a doctrine too well settled to need a citation

of authorities to confirm it."). As C&E holds the Policy under which its employee,

Cumberland, is insured, C&E also has an insurable interest for which it may seek

reimbursement under the Policy.

Nationwide argues that the Maryland regulations governing special needs trusts

prohibit a trustee from "[h]av[ing] an interest in trust assets." Md. Code Regs. § 10.09.24.08-

2(C)(9)(d)(i). This argument totally misconstrues and distorts the purpose of the cited

regulation. Under Md. Code Regs. § 10.09.24.08-2(C)(9)(d), the trustee of a special needs

trust may not:

> (i)   Have an interest in trust assets;
> (ii)  Have discretion to use trust assets for the trustee's own
>        benefit;
> (iii) Self-deal by selling trust assets to the trustees or buying
>        trust assets from the trustee; or
> (iv)  Loan trust assets to the trustee[.]

Md. Code Regs. § 10.09.24.08-2(C)(9)(d). These provisions clearly address a case in which

the trustee engages in self-dealing, and not the present action. Cumberland and C&E sought

merely to protect their obligations to the Trust Account through an insurance policy. This

case is not a matter of self-dealing by the law firm. It is a matter of the law firm exercising its

fiduciary obligations to protect the assets of the Trust Account. Nationwide's argument

impermissibly broadens the prohibition of § 10.09.24.08-2(C)(9)(d)(i) beyond its intended

scope, ignoring the regulatory context in which it arises.

In sum, Cumberland, as trustee to the Trust Account, holds an insurable interest in

the assets of the trust. Cumberland is an employee of the policyholder, C&E, and served as

trustee through his employment at C&E. C&E thus has an insurable interest for which it may seek reimbursement under the Policy.

## B. Cumberland & Erly May Recover Under the Employee Dishonesty Coverage

However, concluding that Cumberland has an insurable interest in the Trust Account does not end this Court's inquiry. As Nationwide is obligated to compensate C&E only for certain losses, this Court must determine whether C&E's loss is cognizable under the Employee Dishonesty Coverage. C&E contends that it suffered a "[d]irect loss of or damage to Business Personal Property and 'money' and 'securities'" when it was required to reimburse the Trust Account for those funds which Davis embezzled. Def.'s Mot. for Summ. J. Ex. B, at 40 (Policy ¶ G(1)(a)(1). Alternatively, C&E asserts that its loss "result[ed] from 'fraudulent instruction' directing a financial institution to transfer, pay or deliver 'money' or 'securities' from your 'transfer account[.]'" *Id.* (Policy ¶ G(1)(a)(3). As the claimed loss is a "direct loss" under the Employee Dishonesty Coverage, this Court need not determine whether it is also a "fraudulent instruction" loss.

C&E's claimed loss is the depletion of its own funds due to its legal obligation (through Cumberland) to the beneficiary of the Trust Account. C&E thus suffered a loss of the sum embezzled by Davis—$157,268.75. Nationwide argues that this loss is not a *direct* loss, as it was not the immediate consequence of Davis's actions. Under this "direct is direct" approach, Nationwide essentially posits that a loss suffered through a legal obligation to a third party may never be a "direct loss" under the Employee Dishonesty Coverage. This Court rejects this argument as unnecessarily narrow. A "direct loss" is one proximately caused by an employee's dishonest act.

There is abundant authority supporting this Court's interpretation. *See, e.g., First Defiance Fin. Corp. v. Progressive Cas. Ins. Co.*, 688 F. Supp. 2d 703, 707 (N.D. Ohio 2010); *Philip R. Seaver Title Co., Inc. v. Great Am. Ins. Co.*, No. 08-cv-11004, 2008 WL 4427582, at *3-4 (E.D. Mich. Sept. 30, 2008). In *First Defiance*, the United States District Court for the Northern District of Ohio addressed this precise issue and held that, when an employee stole funds from a customer trust account, the employer suffered a direct loss. *First Defiance*, 688 F. Supp. 2d at 707. The United States District Court for the Eastern District of Michigan reached the same conclusion and rejected the insurer's assertion that such a loss constituted merely a third-party liability. *Philip Seaver*, 2008 WL 4427582, at 3-4.

Under the "direct is direct" approach, a loss suffered after some "intervening space, time, agency, or instrumentality" from the employee's theft is not a direct loss. *Tooling, Mfg. and Tech. Ass'n v. Hartford Fire Ins. Co.*, 693 F.3d 665, 673 (6th Cir. 2012). Yet in the same year, the United States Court of Appeals for the Sixth Circuit has also applied the "proximate cause" approach to a loss arising from an obligation to third parties. *Retail Ventures, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 691 F.3d 821, 831-32 (6th Cir. 2012). This approach defines "proximate cause" as that of tort law. *See, e.g., Auto Lenders Acceptance Corp. v. Gentilini Ford, Inc.*, 854 A.2d 378, 386 (N.J. 2004). As such, it permits recovery where the insured's obligation to reimburse the third party was reasonably foreseeable. *Id.; see also Scirex Corp. v. Federal Ins. Co.*, 313 F.3d 841, 849-50 (3rd Cir. 2002) (citing *Jefferson Bank v. Progressive Cas. Ins. Co.*, 965 F.2d 1274, 1281-82 (3rd Cir. 1992)) (holding that the "direct cause" of the loss need not be the "'sole cause' or 'immediate cause,' but need only be a proximate or substantial cause.").

The "direct is direct" approach suffers the flaw of attempting to define a term through the very language requiring definition. The term "direct cause" is not susceptible to a clear, definite meaning, but instead is "a nebulous and largely indeterminate concept," *Scirex Corp.*, 313 F.3d at 850 (quoting *Jefferson Bank*, 965 F.2d at 1281). The proximate cause theory, on the other hand, recognizes that restricting "direct loss" to preclude recovery for any third-party obligations "would seem to conflict with the plain and ordinary meaning of a direct loss." *Philip Seaver*, 2008 WL 4427582, at *3. Through its legal obligations to the beneficiary of the Trust Account, C&E suffered direct injury. C&E's employee embezzled money from one account—the Trust Account—and C&E replaced that money with funds from its own account. As in *Philip Seaver*, C&E's "overall funds were directly impacted." *Id.* Even under the "direct is direct" approach advocated by the *Tooling*, C&E's loss is a "direct loss." In this case, no "intervening space, time" or other event occurred—C&E immediately replaced the stolen funds.

Moreover, the narrow approach advocated by Nationwide would create a paradoxical situation in which C&E is nominally insured, but would receive reimbursement for none of its third-party obligations. Such an interpretation renders the Policy meaningless, as C&E would be forced to obtain an insurance policy for each instance in which its employee served as a trustee within the scope of his employment. This burden of this approach would discourage C&E from incurring any such obligations. Accordingly, C&E suffered a "direct loss" within the ambit of the Employee Dishonesty Coverage.

<u>CONCLUSION</u>

For the foregoing reasons, Defendant Nationwide's Motion for Summary Judgment (ECF No. 16) is DENIED and Plaintiff C&E's Cross-Motion for Summary Judgment (ECF No. 19) is GRANTED. In sum, C&E suffered a "direct loss" under the Employee Dishonesty Coverage when its employee embezzled funds from a trust for which C&E had an insurable interest. It is thus entitled to reimbursement for that loss, pursuant to the terms of the Policy. Judgment is entered in favor of C&E and against Nationwide.

A separate Order follows.

Dated: September 3, 2015                              _____/s/_____

Richard D. Bennett
United States District Judge

14